IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


ASHGAR GOOGERDY,                )
                                )
        Plaintiff,              )
                                )
        v.                      )        1:04CV00212
                                )
NORTH CAROLINA AGRICULTURAL     )
AND TECHNICAL STATE UNIVERSITY, )
                                )
        Defendant.              )


                    MEMORANDUM OPINION and ORDER


OSTEEN, District Judge


        Plaintiff Ashgar Googerdy, a former professor of Defendant

North Carolina Agricultural and Technical State University

("A&T"), brought suit in the Superior Court of the State of North

Carolina, Guilford County, alleging claims for discrimination

based on national origin and/or race and breach of contract.

After Plaintiff amended his complaint to clarify that his claim

for discrimination was brought under Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., as

amended; 42 U.S.C. § 1983 ("§ 1983"); and 42 U.S.C. § 1981 ("§

1981"), Defendant removed the suit to this court under federal

question jurisdiction.  This matter is now before the court on

Defendant's motion to dismiss the amended complaint and

Plaintiff's motion to further amend his complaint.  For the

reasons set forth herein, Plaintiff's motion will be denied and Defendant's motion will be granted in part and denied in part.

## I. BACKGROUND[1]

Plaintiff Googerdy, who is a resident of Greensboro, North Carolina, is of Iranian descent. In August 2000, Defendant A&T, a Greensboro university which is part of the University of North Carolina system, hired Plaintiff as an adjunct professor in the engineering department under a nine-month renewable term employment contract. On or about October 26, 2000, Plaintiff received a letter from Defendant, signed by Joseph Monroe, Dean of the College of Engineering. The letter appointed Plaintiff an Associate Professor of Civil and Environmental Engineering under a new four-year term employment contract effective January 1, 2001, through December 31, 2004 ("Appointment Letter").

On June 12, 2002, despite being an excellent instructor and drastically increasing student performance, Dean Monroe notified

---

[1] The following facts are construed in the light most favorable to Plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). The facts are those as alleged by Plaintiff in his amended complaint, except as they have been supplemented by the parties' affidavits and extrinsic evidence to assist in determining whether the court has subject matter jurisdiction. The court has broad discretion to consider relevant and competent evidence, including affidavits and extra-pleading material, when determining jurisdiction. Saval v. BL Ltd., 710 F.2d 1027, 1029 n.2 (4th Cir. 1983). Considering such evidence only for the purpose of determining jurisdiction does not convert a motion to dismiss into one for summary judgment. See Fed. R. Civ. P. 12(b). Therefore, the court will limit its consideration of the extrinsic evidence to issues of jurisdiction.

Plaintiff that he was not recommended to return for the 2002-03 school year. Nevertheless, Plaintiff continued to teach at A&T during the summer sessions. In the last week of July, however, Plaintiff learned his fall courses had been reassigned. As a result, during a conversation with Dean Monroe, on August 5, 2002, Monroe told Plaintiff he was terminated.

In response, Plaintiff left a letter at the office of Provost Carolyn Meyers on August 8, explaining his termination, attaching a copy of the Appointment Letter, and requesting an emergency meeting. When Plaintiff did not hear from Provost Meyers, he sent a letter to Chancellor James Renick disputing his termination. On August 29, 2002, Plaintiff received a response letter from Defendant signed by Dean Monroe and copied to Chancellor Renick and Provost Meyers. Therein, Monroe asserted he did not sign nor authorize his signature on the Appointment Letter and that Plaintiff had never been appointed to a four-year term as associate professor. Instead, Monroe explained Plaintiff was always an adjunct professor and A&T had decided not to renew his nine-month adjunct professor contract for the 2002-03 school year.

## II.  PROCEDURAL POSTURE

Plaintiff brought suit in the Superior Court of the State of North Carolina, Guilford County, alleging discriminatory termination based on his national origin and/or race and that Defendant breached his four-year employment contract. Defendant

3

filed a motion to dismiss in which it contended Plaintiff failed to exhaust his administrative remedies, Defendant was protected by sovereign immunity, and Plaintiff failed to plead the statutes underlying his cause of action for discrimination. In response to Defendant's motion, Plaintiff moved to amend his compliant to add claims for wrongful discharge and deprivation of Plaintiff's constitutional rights under the North Carolina Constitution, and to clarify that Plaintiff's discrimination claim was brought under Title VII, § 1983, and § 1981. Shortly thereafter, Superior Court Judge Burke issued an order denying Defendant's motion to dismiss and granting Plaintiff's motion to amend.

When Plaintiff amended his complaint to clarify that his discrimination claim was founded in federal law, Defendant removed the case to this court under federal question jurisdiction. Defendant answered the amended complaint and then moved for dismissal. Therein, Defendant argues, among other things, that Plaintiff's § 1983 claim should be dismissed because Defendant, as an agency of the State of North Carolina, is not a "person" subject to suit under § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 92, 109 S. Ct. 2304, 2323 (1989). Plaintiff opposes Defendant's motion to dismiss and, as to the § 1983 claim, argues that any deficiency is procedural and easily remedied by amendment. Plaintiff moves to further amend his complaint to add Chancellor Renick and Dean Monroe as defendants.

4

The parties' motions are now fully briefed and pending before the court. Because the court's decision on Plaintiff's motion to amend will undoubtedly affect Defendants' motion to dismiss, the court will address amendment first.

**III. MOTION TO AMEND**

    **A.    Standard of Review**

Amendments to a complaint after a responsive pleading has been served may only be made by leave of court or by written consent of the opposing party. Fed. R. Civ. P. 15(a). A party seeking amendment from the court need not file a supporting brief under the local rules, but "must state good cause" for the amendment. L.R. 7.3(j). Once a motion is filed, leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Under the rule's liberal construction, see <u>Ward Elecs. Serv., Inc. v. First Commercial Bank</u>, 819 F.2d 496, 497 (4th Cir. 1987), motions to amend should be granted absent extraordinary circumstances. Such circumstances include undue delay, bad faith or dilatory motive, a repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment. <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

    **B.    Analysis**

The court notes as an initial matter that Plaintiff's motion does not comply with local rules because Plaintiff offers no explanation for why amendment is necessary, such as newly discovered evidence or a change in applicable law. <u>See</u> L.R.

5

7.3(j).  Instead, Plaintiff speaks to the consequences of, not the reasons for, amendment.  Regardless of this deficiency, justice would not be served by granting Plaintiff's motion to amend because the court finds it is made solely to circumvent Plaintiff's motion to dismiss.

The purpose of a motion to dismiss is to "expedite and simplify the pretrial phase of federal litigation while at the same time promoting the just disposition of civil cases."  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1342 (3d ed. 2004).  Testing the formal sufficiency of the statement of the claim for relief found in a plaintiff's complaint is the very purpose for Federal Rule of Civil Procedure 12(b)(6).  Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  As a result, courts look disfavorably on motions to amend brought for the purpose of circumventing dispositive motions.  See, e.g., Sandcrest Outpatient Servs., P.A. v. Cumberland County Hosp. Sys., Inc., 853 F.2d 1139, 1149 (4th Cir. 1998) (affirming denial of a motion to amend in part because "the proposed amendment appears to have been an after-thought by appellant, possibly prompted only by the concern that it would lose on the summary judgment motion"); Goewey v. United States, 886 F. Supp. 1268, 1284-85 (D.S.C. 1995) (denying plaintiffs' motion to amend because the "[p]laintiffs' attempt to amend their complaint now . . . appears to be an eleventh hour attempt to evade a grant of summary judgment").  Here, Plaintiff's motion to amend is the second of its kind brought while a motion to dismiss

6

was pending, the first filed while the suit was in state court.
Plaintiff readily acknowledges that this second motion to amend,
filed the same day as his opposition to Defendant's motion to
dismiss, is brought to defeat Defendant's motion regarding his §
1983 claim. (See Pl.'s Br. Opp'n Def.'s Mot. Dismiss at 5
(arguing against dismissal because "Googerdy has filed a motion
to amend his complaint" to remedy the pleading defects)). The
court cannot allow Plaintiff to amend simply to defeat
Defendant's motion to dismiss. Plaintiff, as master of the
lawsuit, must assert appropriate claims against proper parties in
a timely manner or suffer dismissal. To allow amendment each
time a complaint is challenged would wreak havoc on the judicial
system by adding substantial delay and undermining the Federal
Rules of Civil Procedure.

In addition to delay, Defendant has asserted that it, as
well as the newly-named defendants, would be prejudiced by
further amendment. First, Plaintiff's proposed amendment is not
limited to adding Renick and Monroe in their official capacities.
Language in the amendment that "Defendants acted willfully and
maliciously" (Proposed Second Am. Compl. ¶ 16) insinuates claims
against Renick and Monroe in their individual capacities as well.
Although Renick and Monroe may have already been involved in this
litigation in their official capacities as representatives of
Defendant, they were not named defendants and had no notice of
potential personal liability. Second, the addition of Renick and
Monroe would revive Plaintiff's § 1983 claim and greatly expand

7

Defendant's potential liability. Their addition would expand Plaintiff's available remedies for recovery against Defendant to include injunctive and equitable relief as well as punitive damages. See Piver v. Pender County Bd. of Educ., 835 F.2d 1076, 1082 (4th Cir. 1987) (recognizing punitive damages in a § 1983 case for malicious intent to deprive or reckless or callous disregard of a plaintiff's federally protected rights). Under the circumstances, the proposed amendment does far more than "correct a procedural defect in the original complaint" (Br. Supp. Pl.'s Mot. Amend ¶ 3) because it prejudices the potential defendants and A&T.

Plaintiff's proposed amendment is brought solely to circumvent Defendant's motion to dismiss. If the court grants Plaintiff's motion, it will cause unnecessary delay in this matter, reward dilatory and neglectful pleading, and will bring prejudice to the potential defendants and A&T. Accordingly, amendment is not in the interest of justice and will be denied. See Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (holding delay accompanied by prejudice, bad faith, or futility is sufficient reason to deny leave to amend).

## IV. MOTION TO DISMISS

Plaintiff brings four causes of action in his amended complaint: (1) discrimination under § 1981, § 1983, and Title VII; (2) wrongful discharge in violation of North Carolina public policy; (3) breach of contract; and (4) deprivation of

8

constitutional rights under the North Carolina Constitution. Defendant seeks to dismiss all of Plaintiff's claims except for his Title VII claim, for which it simply moves to dismiss Plaintiff's demand for punitive damages. The court will address each argument in turn.

## A. Discrimination Claim Brought Under 42 U.S.C. § 1981

Plaintiff alleges a direct cause of action for discrimination on the basis of national origin and/or race under § 1981, which outlaws discrimination in the making and enforcement of private contracts. Defendant argues Plaintiff's § 1981 claim must be dismissed because § 1983 is the exclusive remedy against a state for violation of a person's § 1981 rights.

Defendant is correct in its argument. In <u>Jett v. Dallas Independent School District</u>, the Supreme Court held that § 1983 provides the exclusive remedy against state actors for violation of § 1981 rights. 491 U.S. 701, 732-33, 109 S. Ct. 2702, 2721 (1989). Where all named defendants are state actors and the complaint alleges a § 1983 claim covering the same factual matters as the § 1981 claim, courts may dismiss the § 1981 claim, <u>see</u> <u>Cerrato v. San Francisco Comm. Coll. Dist.</u>, 26 F. 3d 968, 972 (9th Cir. 1994), or may deem the § 1981 claim merged with the § 1983 claim, <u>see</u> <u>Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.</u>, 320 F. Supp. 2d 378,

402-03 (M.D.N.C. 2004).[2]  Here, Plaintiff cannot pursue a direct
§ 1981 claim against Defendant, which is an alter ego of the
State of North Carolina.  See N.C. Gen. Stat. § 116-4 (naming A&T
as one of the constituent institutions of the University of North
Carolina system); Huang v. Board of Governors of Univ. of N.C.,
902 F.2d 1134, 1139 n.6 (4th Cir. 1990) (recognizing the Board of
Governors of the University of North Carolina as an alter ego of
the State of North Carolina); Roberson v. Dale, 464 F. Supp.
680, 689 (M.D.N.C. 1979) (holding that the University of North
Carolina system is an alter ego of the State).  Because Defendant
is a state actor and Plaintiff has brought a § 1983 claim on the
same basis as his § 1981 claim, the court will grant Defendant's
motion to dismiss.

**B.  Discrimination Claim Brought Under 42 U.S.C. § 1983**

Plaintiff brings a claim against Defendant for terminating
his employment on the basis of race and/or national origin in
violation of § 1983 which creates a direct cause of action
against "persons" who violate one's federally protected rights,
privileges, or immunities under color of law.  See 42 U.S.C. §
1983.  Defendant argues this claim must be dismissed because A&T
is not a proper defendant in a § 1983 action.

---

[2]  The effects of dismissal and merger are the same, because
even when a § 1981 claim is merged with a § 1983 claim, the §
1981 claim is in all practicality extinguished.

10

The Supreme Court, in interpreting § 1983, has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989). This holding necessarily excludes A&T, as an alter ego of the State of North Carolina, from liability under § 1983. Because Plaintiff's amended complaint fails to name any state official in his or her official capacity and the court has denied Plaintiff's motion to amend, Defendant's motion to dismiss will be granted as to this claim.

### C. Prayer for Punitive Damages as to Plaintiff's Discrimination Claim

In his prayer for relief, Plaintiff seeks to recover punitive damages for violation of his federal civil rights. Because Plaintiff's § 1981 and § 1983 claims will be dismissed,[3] Plaintiff's prayer for punitive damages applies, if at all, to his claim for discriminatory termination under Title VII. Defendant argues punitive damages are barred by law as to this claim.

Government agencies are immune from punitive damages under Title VII by explicit statutory provision, which provides:

---

[3] An additional consequence arises from the court's decision to dismiss Plaintiff's § 1981 and § 1983 claims in that the court need not address the parties' arguments regarding whether money damages are barred by Defendant's Eleventh Amendment immunity.

> A complaining party may recover punitive damages under this section against a respondent (<u>other than a government, government agency, or political subdivision</u>) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. § 1981a(b)(1) (emphasis added). Accordingly, Defendant, as an alter ego of the State of North Carolina, is likewise immune from punitive damages. Plaintiff's prayer for punitive damages for violation of his federal civil rights will be dismissed.

### D. Wrongful Discharge

Plaintiff's second cause of action is for wrongful discharge in violation of North Carolina public policy. Therein, Plaintiff alleges that Defendant's termination of his employment because of his national origin and/or race violated North Carolina public policy. Defendant moves to dismiss the claim arguing wrongful discharge requires an at-will employment relationship and Plaintiff has pled he was working under an employment contract.

Dismissal of Plaintiff's wrongful discharge claim is appropriate under the circumstances. Wrongful discharge in violation of public policy in North Carolina applies only to at-will employees. <u>Wagoner v. Elkin City Schs.' Bd. of Educ.</u>, 113 N.C. App. 579, 588, 440 S.E.2d 119, 125, <u>disc. review denied</u>, 336 N.C. 615, 447 S.E.2d 414 (1994) ("[T]he tort of wrongful

12

discharge arises only in the context of employees at will.")
(citing Coman v. Thomas Mfg. Co., 325 N.C. 172, 175, 381 S.E.2d
445, 447 (1989)).  Where one is employed for a definite term or
subject to discharge only for cause, the proper remedy is breach
of contract.  Id. (citing Elmore v. Atlantic Coast Line R.R. Co.,
191 N.C. 182, 188, 131 S.E. 633, 636 (1926)).  Here, the parties
have at all times advanced two different versions of the facts.
Plaintiff has contended from the beginning that he and Defendant
were bound by a four-year employment contract.  Equally
consistently, Defendant has maintained that Plaintiff was
employed at A&T under a nine-month employment contract which was
renewed for several years, but was not renewed in the summer of
2002.  Regardless of which version of the facts is adopted as
truth by the factfinder, neither version leads to a finding of
at-will employment.  See Claggett v. Wake Forest Univ., 126 N.C.
App. 602, 611, 486 S.E.2d 443, 448 (1997) (holding that a
plaintiff's employment was not at-will for purposes of a wrongful
discharge claim where plaintiff alleged he was employed pursuant
to teaching appointments of definite durations and the defendant
failed to renew his teaching appointment).  Although "all
pleadings shall be so construed as to do substantial justice,"
Fed. R. Civ. P. 8(f), justice in these circumstances requires

13

dismissal.[4]  Therefore, the court will grant Defendant's motion to dismiss Plaintiff's cause of action for wrongful discharge.

### E.    Breach of Contract

Plaintiff alleges in his amended complaint that Defendant breached his employment contract — the nine-month and/or four-year version — by terminating his employment in the summer of 2002.  Defendant argues in its brief supporting dismissal that the court does not have jurisdiction over this claim because Plaintiff has failed to exhaust his administrative remedies.  In opposition, Plaintiff makes four alternative arguments:[5]  (1) he

---

[4]  Plaintiff's claim is not saved under the theory of alternative pleading.  Although such pleading is allowed under the liberal pleading system created by the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 8(e)(2) ("A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses."), Plaintiff has failed to allege any facts which would support his claim that he was an at-will employee. Although no technical form is required for pleading alternatively, see Arnold & Assocs., Inc. v. Misys Healthcare Sys., 275 F. Supp. 2d 1013, 1029 (D. Ariz. 2003) (noting that "there are no requirements to include the magic words 'in the alternative' in making alternative claims"), Plaintiff must still plead sufficient facts to state a claim for relief.  See Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957) (holding that the short and plain statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").  Having failed to do so, Plaintiff's alternative pleading fails.

[5]  In addition to the four arguments set forth, Plaintiff contends res judicata bars Defendant from arguing that Plaintiff failed to exhaust his administrative remedies.  Plaintiff's argument is based upon Superior Court Judge Burke's denial of Defendant's motion to dismiss Plaintiff's original complaint
(continued...)

14

did not know of the administrative remedies; (2) he substantially

complied with the administrative procedures; (3) any

administrative review would have been futile under the

circumstances; and (4) Defendant should be estopped from arguing

that Plaintiff failed to exhaust the administrative procedures.

The North Carolina Administrative Procedure Act ("NCAPA"),

as codified in N.C. Gen Stat. § 150B, establishes a uniform

system of administrative and adjudicatory procedures for state

agencies. The actions of the University of North Carolina, of

which A&T is a part, are made subject to the judicial review

procedures of the NCAPA. See N.C. Gen. Stat. §§ 150B-1(f).

Under the judicial review provision, a faculty member may only

seek judicial review of a University of North Carolina decision

once he has exhausted the administrative remedies provided by the

---

[5](...continued)
which made the same argument. Plaintiff's argument fails for
several reasons. First, the factual scenario here does not fall
within res judicata as the term is understood, whether in the
context of claim preclusion or issue preclusion. Both require
valid final judgments, which has not been rendered in this case.
See Baker by Thomas v. General Motors Corp., 522 U.S. 222, 233
n.5, 118 S. Ct. 657, 664 n.5 (1998) (defining res judicata and
the elements of claim and issue preclusion). Second, amendment
of the original complaint created a substitution of the
pleadings, giving the original complaint, and likewise the denial
of dismissal of that complaint, no legal effect. See
International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir.
1977) (recognizing that an amended complaint "ordinarily
supersedes the original and renders it of no legal effect").
Third, even if an order denying a motion to dismiss could have
some preclusive effect, Judge Burke's order does not make
sufficient legal or factual findings to have any preclusive
effect.

rules and regulations of the University of North Carolina. Id. §
150B-43. Where a faculty member has not exhausted his
administrative remedies, a trial court does not have subject
matter jurisdiction to hear the matter. Huang v. North Carolina
State Univ., 107 N.C. App. 710, 714, 421 S.E.2d 812, 815 (1992).

Pursuant to the Code of the Board of Governors of the
University of North Carolina, A&T has adopted Regulations on
Academic Freedom, Tenure and Due Process ("Regulations"). The
Regulations are maintained with the human resources department of
A&T and with each hiring unit, including the College of
Engineering. (Monroe Aff. ¶ 7.) The Regulations provide, among
other rights, due process for terminated faculty members of A&T.
Where a faculty member is discharged for reasons other than
retirement, reduction in force, or non reappointment when on a
probationary term,[6] Section 4 of the Regulations, entitled "Due
Process Before Discharge or the Imposition of Serious Sanctions,"
applies. This section specifies that faculty members serving
stated terms, as was Plaintiff, "shall be regarded as having

---

[6] According to the Regulations, only the first year of an
appointment, whatever the position, constitutes a probationary
period. (See Googerdy Aff. Ex. 11 § 3.B.) No matter whether
Plaintiff was serving as an adjunct professor under a renewable
nine-month contract beginning August 2000 or as an associate
professor under a four-year contract beginning October 26, 2000,
Plaintiff worked for Defendant for more than one year by the time
he was terminated on June 12, 2002. As a result, the section of
the Regulations entitled "Nonreappointment of Faculty Members on
Probationary Term Appointment" does not apply here.

16

tenure until the end of that term." (Googerdy Aff. Ex. 11 §
4.A.) Upon termination, the faculty member may request from the
Chancellor a specification of the reasons for termination or a
hearing before the Faculty Hearing Committee. (Id. § 4.C. - H.)
If a faculty member is not satisfied with the stated reasons or
the outcome of the hearing, he may appeal to the Board of
Trustees (id. § 4.I.) and then make a further appeal to the Board
of Governors. Id. Once the Board of Trustees has rendered a
decision, a faculty member may invoke his right to judicial
review.

Here, there is no dispute that Plaintiff did not in fact
exhaust all of the administrative remedies provided for by the
Regulations. The real issue is whether there is a legal excuse
for Plaintiff's noncompliance or an equitable doctrine which
should bar enforcement of the administrative procedures. The
court cannot find that Plaintiff's ignorance of the
administrative procedures is a legal justification for failure to
exhaust his remedies. Plaintiff had several opportunities to
investigate the existence of any internal grievance system at A&T
both before and after he was represented by counsel. To give
such credit to Plaintiff's alleged lack of knowledge would be to
throw out the venerable principle that ignorance of the law is no
excuse. See Orange County v. North Carolina Dep't of Transp., 46
N.C. App. 350, 377, 265 S.E.2d 890, 908 (1980) (recognizing the

17

principle but finding it inapplicable where, as a matter of
practicality, the claimant was denied a reasonable means for
finding out what the law is in the first place). Similarly, the
court cannot find that Plaintiff substantially complied with the
administrative procedures. While Plaintiff did contact several
members of the administration at A&T, including Chancellor
Renick, generally disputing his termination or asking for help,
he did not exhaust the chain of appeal required by the
Regulations and the NCAPA in order to seek judicial review. To
find substantial compliance here would circumvent the procedural
requirements of the NCAPA and open the door to potential abuse by
claimants and premature judicial review. Additionally, the court
cannot, under the doctrine of equitable estoppel, find that
Defendant is estopped from asserting the defense of failure to
exhaust administrative remedies. Even though federal statutes
requiring exhaustion may be subject to tolling or estoppel
because they have been held to resemble statutes of limitations,
see, e.g., Kirkendall v. Department of Army, 412 F.3d 1273, 1276
(Fed. Cir. 2005) (discussing circuit holdings, including those of
the Fourth Circuit, subjecting federal statutes to equitable
remedies), exhaustion of administrative procedures under the
NCAPA have been held to be a jurisdictional requirement. See,
e.g., Shell Island Homeowners Ass'n, Inc. v. Tomlinson, 134 N.C.
App. 217, 220, 517 S.E.2d 406, 410 (1999) ("An action is properly

18

dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction where the plaintiff has failed to exhaust administrative remedies."). This prevents the court, which without subject matter jurisdiction is powerless, from applying its equitable powers. See, e.g., Nelson v. United States Postal Serv., 189 F. Supp. 2d 450, 454 (W.D. Va. 2002) (recognizing that a motion to dismiss for lack of subject matter jurisdiction presents a threshold question concerning a court's power to act).

The only potential defense to Plaintiff's failure to exhaust his administrative remedies must lie, if at all, in the limited exception for futility or inadequacy of the administrative procedures. It is a general principle that exhaustion of administrative remedies is not required where exhaustion would be futile or inadequate. Justice for Animals, Inc. v. Robeson County, 164 N.C. App. 366, 595 S.E.2d 773 (2004) (citing for the principle Huang v. North Carolina State Univ., 107 N.C. App. 710, 715, 421 S.E.2d 812, 815 (1992)). The burden of showing inadequacy or futility of the administrative remedy is on the party claiming the exception and such circumstances supporting an exception must be alleged in the complaint. Jackson for Jackson v. North Carolina Dep't of Human Res., 131 N.C. App. 179, 186, 505 S.E.2d 899, 904 (1998). Here, Plaintiff has alleged and offered evidence of a reasonable basis for finding that exhaustion was futile. Because Defendant denies Plaintiff was

ever offered a four-year contract as an associate professor and
that the appointment letter was a forgery, Plaintiff did not
receive the notice of his due process rights as required by the
Regulations. (See Googerdy Aff. Ex. 11 § 4.B. ("The statement
[of discharge] shall include notice of the faculty member's
right, upon request, to both written specification of the reasons
for the intended discharge and a hearing.")). Additionally, when
Plaintiff did receive a written response to his letter to
Chancellor Renick disputing his termination, Defendant's agents
essentially foreclosed any internal administrative remedies by
writing, "You were classified as an Adjunct Professor, a position
that is not authorized to have a multiple year contract. . . . I
trust that this letter concludes this matter." (Id. Ex. 5.)
Furthermore, when counsel for Plaintiff requested the reasons for
termination, Defendant, through its legal counsel, responded, "My
letter speaks for itself. I have no other answers or
explanations for you at this time. You and your client are free
to pursue the legal avenues you choose." (Id. Ex. 8.) Under the
circumstances, because Defendant has always denied Plaintiff was
covered by the four-year contract, any further insistence on due
process protections through Defendant's Regulations appears
futile.

Despite the inference of futility, a determination of the
court's subject matter jurisdiction is necessarily intertwined

20

with the underlying substantive merits of the case, especially the origin and legitimacy of the Appointment Letter.  As such, the court will defer a decision on whether Plaintiff's failure to exhaust his administrative remedies bars the court from hearing his breach of contract claim until the parties have had an opportunity to conduct discovery.  Therefore, the court will deny Defendant's motion to dismiss this claim for lack of subject matter jurisdiction, but as with any deficiency in subject matter jurisdiction, Defendant is free to raise the argument again at a later time.  <u>See</u> Fed. R. Civ. P. 12(h).

### F. Deprivation of Plaintiff's Rights Under the North Carolina Constitution

Plaintiff's final cause of action is for depravation of his constitutional rights under the North Carolina Constitution. More particularly, Plaintiff claims Defendant violated Section 19 of Article I of the North Carolina Constitution by discriminating against him on the basis of his national origin and/or race. This section of the constitution provides, "No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin."  N.C. Const. Art. I, § 19. Defendant argues its sovereign immunity bars the claim because Plaintiff has other adequate state remedies available.

21

Under North Carolina law, a plaintiff may bring a direct claim under the state constitution only if no other adequate state law remedy exists.  Corum v. University of N.C., 330 N.C. 761, 782, 413 S.E.2d 276, 289, (1992).  "An adequate state remedy exists if, assuming the plaintiff's claim is successful, the remedy would compensate the plaintiff for the same injury alleged in the direct constitutional claim."  Estate of Fennell ex rel. Fennell v. Stephenson, 137 N.C. App. 430, 437, 528 S.E.2d 911, 915-16 (2000), reversed in part on other grounds, 354 N.C. 327, 554 S.E.2d 629 (2001).  Under this analysis, North Carolina courts have held a myriad of common law and statutory claims adequate remedies for deprivation of constitutional rights.  See, e.g., Phillips v. Gray, 163 N.C. App. 52, 58, 592 S.E.2d 229, 233 (2004) (holding a claim for wrongful discharge adequately protected the plaintiff's free speech rights); Glenn-Robinson v. Acker, 140 N.C. App. 606, 631-32, 538 S.E.2d 601, 619 (2000) (holding a claim for false imprisonment was adequate to protect the constitutional right not to be unlawfully detained); Stroud v. Harrison, 131 N.C. App. 480, 487, 508 S.E.2d 527, 531 (1998) (holding the Handicapped Persons Protection Act adequately protected equal protection violation for handicapped plaintiff).  Thus, administrative regulations contained in the NCAPA have been held to constitute an adequate state remedy which bars a direct constitutional claim.  See, e.g., Swain v. Elfland, 145 N.C. App.

22

383, 550 S.E.2d 530 (2001) (holding that administrative hearing was adequate state remedy for the plaintiff's free speech claim); Hawkins v. State, 117 N.C. App. 615, 629, 453 S.E.2d 233, 241 (1995) (holding that due process injury was adequately protected by NCAPA). Likewise, claims for breach of contract have been held to be adequate state remedies. See, e.g., Ware v. Fort, 124 N.C. App. 613, 619, 478 S.E.2d 218, 222 (1996) (holding that the plaintiff could not bring a due process claim under the North Carolina Constitution because he had a valid breach of contract claim).

Considering the posture of this matter, dismissal of Plaintiff's direct constitutional claim is inappropriate. The court has deferred ruling on whether it has subject matter jurisdiction to hear Plaintiff's breach of contract claim. A determination of that issue may provide Plaintiff an adequate state remedy. Additionally, in considering whether the court has jurisdiction, the court must consider whether it was futile for Plaintiff to comply with the Regulations and NCAPA. If the court should determine that the limited exception for futility does not apply, the administrative procedures available to Plaintiff would not only bar his breach of contract claim but also serve as an adequate state remedy, whether he took advantage of the administrative remedies or not. See Ware, 124 N.C. App. at 619, 478 S.E.2d at 222 (1996) (denying constitutional claim because

23

"Plaintiff could have sought judicial review of the final [Board of Governors] decision under Chapter 150B of the Administrative Procedure Act"). Therefore, Defendant's motion to dismiss will be denied as to this claim.

## V.    CONCLUSION

For the reasons stated herein,

IT IS ORDERED that Plaintiff's Motion to Amend Complaint [15] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Claims in Plaintiff's First Amended Complaint [9] is GRANTED in part and DENIED in part. Defendant's motion is GRANTED as to Plaintiff's claims for discrimination in violation of 42 U.S.C. §§ 1981 and 1983 and wrongful discharge. Plaintiff's demand for punitive damages for discrimination is DISMISSED. Defendant's motion is DENIED as to Plaintiff's claims for breach of contract and violation of the North Carolina Constitution. Defendant may renew its motion to dismiss as to these claims, as stated herein, once discovery has been conducted.

This the 24th day of August 2005.

United States District Judge