IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ASHGAR GOOGERDY,              )
                              )
     Plaintiff,               )
                              )
     v.                       )    1:04CV00212
                              )
NORTH CAROLINA AGRICULTURAL   )
AND TECHNICAL STATE UNIVERSITY,)
                              )
     Defendant.               )

MEMORANDUM OPINION and ORDER

OSTEEN, District Judge

The following matter is before the court on motion by Defendant under Federal Rules of Civil Procedure 60(b) and 62. Defendant seeks reconsideration of this court's decision to remand Plaintiff's pendant state law claims in light of the confusion regarding the existence of a remaining federal claim. Defendant also challenges the court's decision to refuse to exercise supplemental jurisdiction over Plaintiff's pendant state law claims on the basis that a reversal of the court's order dismissing Plaintiff's federal claims would return the same matter to the federal district court.

I.   **FACTUAL BACKGROUND**

Dr. Ashgar Googerdy ("Dr. Googerdy") began his employment with NC A&T in the mid-1980s as an assistant professor in NC A&T's College of Engineering ("COE"). He taught at the University as an adjunct professor under yearly contracts. His

employment with NC A&T ended when Defendant decided not to rehire Dr. Googerdy for the 2002-2003 academic year.

Plaintiff contends that his termination was unlawful because two contracts in the form of signed letters existed with the Defendant that guaranteed him employment: one that purports to hire him for a one-year term beginning August 14, 2000, and ending in May 2001, and another for a term of four years beginning January 1, 2001, and ending on December 31, 2004. Though both letters bear Dean Monroe's signature, Dean Monroe contends that he did not sign the letters, and that the signatures are in fact forgeries. Regardless of the differing accounts, Dean Monroe informed Dr. Googerdy that he would not be employed as a professor for the 2002-2003 academic year. After being told that the Dean's decision was final, Dr. Googerdy ultimately filed this lawsuit.

**II. PROCEDURAL HISTORY**

Plaintiff filed a complaint in the Guilford County Superior Court on October 2, 2003, alleging breach of contract and discriminatory termination. Plaintiff amended the complaint on February 6, 2004, maintaining that Defendant's actions violated both the North Carolina Constitution, article I, section 19, as well as Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §§ 1981, 1983. After Plaintiff amended the complaint to include a federal cause of action, Defendant successfully petitioned for removal to this United States District Court on March 5, 2004.

Defendant submitted an answer to Plaintiff's amended complaint accompanied by a motion to dismiss.  Plaintiff responded to Defendant's motion and concurrently made a motion to amend the complaint.  In a memorandum opinion and order dated August 24, 2005, this court denied Plaintiff's motion to amend and granted in part and denied in part Defendant's motion to dismiss.  The court dismissed Plaintiff's discrimination claim under Title VII (specifically, 42 U.S.C. §§ 1981, 1983) for two reasons:  (1) a § 1981 action does not allow a person to seek a remedy against a state actor, and (2) a § 1983 action excludes a state (or NC A&T as an alter ego of a state) from the definition of a "person" subject to suit.[1]  The court also dismissed Plaintiff's wrongful discharge claim, as such a claim requires an at-will employment relationship and Plaintiff alleges a term-employment contract existed.

Defendant then moved for summary judgment.  Perhaps mistakenly believing that all federal claims were previously disposed of, this court remanded the remaining state claims to the North Carolina Superior Court in order to avoid ruling on a state constitutional issue.  In response to the court's remand, Plaintiff filed an appeal to the August 2005 Order that granted in part and denied in part Defendant's motion to dismiss. Defendant also filed two motions with the court, one for stay

---

[1] The court also dismissed Plaintiff's prayer for punitive damages for violation of his federal civil rights in light of the fact Plaintiff's §§ 1981 and 1983 claims were dismissed.

3

under Rule 62 and the other for relief from judgment under Rule 60(b). Defendant seeks to enjoin the state proceedings on the grounds that Defendant would be compelled to litigate two similar trials in two different courts should the Fourth Circuit reverse and remand this court's order dismissing the federal claims.

**III. ANALYSIS**

**A. Defendant's Motion to Stay**

Defendant asks this court to enjoin the proceeding in the Guilford County Superior Court pursuant to its powers under Rule 62, by staying the execution of the court's September 1, 2006, order. This calls into question the court's authority to enjoin a proceeding in a state court.

A federal court's power to enjoin a parallel proceeding in state court is limited by the Anti-Injunction Act. See 28 U.S.C. § 2283 (2006); Atlantic C. L. R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 90 S. Ct. 1739 (1970). This Act states that a "court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Id. The Supreme Court has interpreted this statute as "an absolute prohibition against enjoining state court proceedings, unless [an] injunction falls within one of three specifically defined exceptions." Atlantic, 398 U.S. at 287, 90 S. Ct. at 1743. This creates a "presumption in favor of permitting parallel litigation in state and federal courts." Bennett v. Medtronic, Inc., 285

4

F.3d 801, 806 (9th Cir. 2002) (citing <u>Atlantic C. L. R. Co. v. Bhd. of Locomotive Eng'rs</u>, 398 U.S. 281, 90 S. Ct. 1739 (1970)). Therefore, when a doubt exists as to a federal court's authority to enjoin a state proceeding, the court should resolve the issue in favor of allowing the state court action to proceed. <u>Atlantic</u>, 398 U.S. at 296-97, 90 S. Ct. at 1747-48.

Defendant seeks to enjoin the state court proceeding on account of fairness and efficiency concerns, and not on grounds referenced in the Anti-Injunction Act. In order for this court to find the authority necessary to stay the proceeding in the Guilford County Superior Court, such authority must be expressly authorized by Act of Congress, necessary in aid of the court's jurisdiction, or to protect or effectuate the court's judgments. This court knows of no Act of Congress that would allow it to enjoin a state proceeding based on a pending federal appeal.[2] Additionally, staying the state action would neither protect nor effectuate the court's prior judgment, especially in light of the court's decision specifically remanding the matter to state court. Defendant, therefore, must request relief under the assumption that staying the state proceeding would be necessary to aid the court's jurisdiction.

Despite the Anti-Injunction Act's broad language, the "necessary in aid of the court's jurisdiction" clause "applies only in strictly limited situations." 17A <u>Moore's Federal Practice</u> § 121.07 (2006). A court is not free to ignore these

---

[2] Defendant offers no such act in support of its motion.

5

limitations "merely because [state court] proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear." Atlantic, 398 U.S. at 294, 90 S. Ct. at 1747. Instead, a state proceeding must be of the type that would interfere "with a federal court's consideration or disposition of a case [so] as to seriously impair the federal court's flexibility and authority to decide that case." Id., 398 U.S. at 295, 90 S. Ct. at 1747. Courts have found this situation to exist in two types of cases: (1) in removed cases, and (2) in parallel in rem actions. 17A Moore's Federal Practice § 121.07 (2006).

The case before this court does not fall into the category of either a case removed from state court or an in rem action. While it is true this case was initially removed from state court, there is no issue as to whether the state court proceeding was enjoined at the moment of removal. Congress, in passing the Anti-Injunction Act, was primarily concerned with a federal court's authority to exercise jurisdiction after a state proceeding had been properly removed to federal court. 28 U.S.C. § 2283 (2006) (1948 Revision Note). In those matters, a state court could interfere with a federal court's jurisdiction should the state court decide not to abstain from deciding the case.

Once a state court reasserts jurisdiction over a case remanded by a federal court, there are no concerns over the federal court's authority to exercise of jurisdiction. If the federal issues are remanded to the federal court, the fact that a

6

similar parallel action exists in a state court cannot prevent the court from presiding over the federal claims.  Moreover, once a federal court remands a case to a state court, the natural conclusion is that the court found jurisdiction was more appropriate in the state forum.

A court should treat situations where dismissed federal claims are pending appeal and state law claims are remanded in a similar manner as parallel in personam actions for the purposes of 28 U.S.C. § 2283.  The courts view parallel in personam actions as those that do not interfere with the jurisdiction of a federal court.  See <u>Vendo v. Lektro-Vend Corp.</u>, 433 U.S. 623, 642, 97 S. Ct. 2881, 2893 (1977) ("We have never viewed parallel in personam actions as interfering with the jurisdiction of either court."); <u>Winkler v. Eli Lilly & Co.</u>, 101 F.3d 1196, 1202 (7th Cir. 1996); <u>Bennett</u>, 285 F.3d at 806.  The Guilford County Superior Court's exercise of jurisdiction over the state law claims in no way interferes with this court's authority to exercise jurisdiction over any federal claims.  Should the Fourth Circuit reverse this court's dismissal of the federal claims, the case would proceed in two separate in personam actions:  one for state law claims before the Guilford County Superior Court, and the other for federal claims before this court.  This situation is not one set aside by Congress as an exception to the Anti-Injunction Act, and therefore, enjoining the state proceeding is inappropriate.  Accordingly, Defendant's motion to stay will be denied.

7

**B. Defendant's Motion for Relief from Judgment**

Defendant requests relief from judgment on the ground that the court remanded this case to the Guilford County Superior Court while a federal claim still existed. This court, being under the impression that Plaintiff's Title VII claim had been properly disposed of on an earlier motion, now revisits the issue to resolve any confusion, as allowed under Rule 60(b).

Rule 60(b)(1) allows a court to grant relief from a judgment if there was "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Though a court may grant relief, "[a] motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation." Fed. R. Civ. P. 60(b). In order to obtain relief under 60(b), "a movant must give the district court reason to believe that vacating the judgment will not be an empty exercise or a futile gesture." Murray v. District of Columbia, 52 F.3d 353, 355 (D.C. Cir. 1995) (citation and internal quotations omitted).

As mentioned above, there is cause for confusion as to whether a claim under Title VII still remained at the time the court remanded this matter. Assuming that such a claim existed, its presence would not be sufficient cause to grant relief from the court's prior judgment because that claim would have been properly disposed of at the summary judgment stage. This result would cause the court to grant relief for the sole purpose of granting summary judgment on the Title VII claim and then remanding the remaining claims to the Guilford County Superior

Court.  Such an action would be an empty exercise.  For the purpose of clarity, however, the court will address the Title VII claim.

In his complaint, Plaintiff maintains that Defendant violated Title VII by not offering him continued employment on account of his national origin.  Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2 (2006).  The Fourth Circuit applies the McDonnell Douglas scheme of proof in Title VII claims in instances "where the defendant disavows any reliance on discriminatory reasons for its adverse employment action."  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 57-58 (4th Cir. 1995) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973)).[3]

Under the McDonnell Douglas test, the plaintiff bears the burden of production and must establish a prima facie case of discrimination by the preponderance of the evidence.  Runnebaum v. NationsBank of Md., 123 F.3d 156, 164 (4th Cir. 1997)

---

[3] The court uses the McDonnell Douglas approach in light of the fact that Plaintiff cannot demonstrate that Defendant possessed any discriminatory animus.  In fact, Defendant is credited with hiring or promoting three professors of Iranian nationality in addition to Dr. Googerdy.  Additionally, the Fourth Circuit allows for a strong inference that discrimination was not the determining factor in an adverse employment action when "the hirer and the firer are the same individual."  Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991).

9

(citation omitted).  After meeting this burden, a plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against him.  <u>Id.</u> (citation and internal quotations omitted).  Then, the employer must set forth reasons for its action which would "support a finding that unlawful discrimination was not the cause for the employment action."  <u>Id.</u> (citations and internal quotations omitted).  Once the employer meets this burden, the presumption of discrimination "drops from the case," and the plaintiff must show that the articulated reason is a pretext for discrimination.  <u>Id.</u> (citing <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 255, 101 S. Ct. 1089, 1094-95 (1981)).  In cases like these, the plaintiff still bears the burden of proof, meaning that summary judgment is appropriate unless he presents adequate evidence that the employer unlawfully discriminated.  <u>Id.</u> (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506-11, 113 S. Ct. 2742, 2747-49 (1993)).

In order to establish a prima facie case of discrimination under Title VII, a plaintiff must show by a preponderance of the evidence that:  "(1) she was a member of the protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination."  <u>Ennis</u>, 53 F.3d at 58 (citations omitted).  In order to defeat summary judgment, a plaintiff must offer more than mere unsupported speculation.  <u>Id.</u> at 62.  There must be evidence on

which the jury could reasonably find for the plaintiff because
"the mere existence of a scintilla of evidence in support of the
plaintiff's position will be insufficient."  Runnebaum, 123 F.3d
at 164 (citation and internal quotations omitted).

The first two elements that Plaintiff must prove are not the
subject of great dispute, so the court will assume these elements
are satisfied.[4]  Plaintiff, therefore, must show that he was
meeting Defendant's legitimate expectations at the time he was
not offered continued employment.  In this case, Plaintiff cannot
show beyond the required burden of proof that he was meeting
Defendant's expectations.[5]  Aside from his self-serving
affirmations, Plaintiff has not produced evidence contradicting
or explaining his below average student evaluations, reports of
student complaints, or Dr. Rojeski's critical review of his
classes.

Though Plaintiff does offer evidence that his students were
part of a group that achieved a higher passing rate on the
Fundamental Engineering Examination, he cannot show that such
success was attributable to his efforts alone.  While Dr.

---

[4] The court recognizes that there may be disagreement as to whether Defendant "discharged" Plaintiff since Plaintiff's term expired by contract.  The assumption in favor of Plaintiff, however, does not prejudice Defendant since Plaintiff fails to satisfy the additional elements.

[5] The court notes that it should proceed cautiously when deciding on whether to interfere with a professional employment decision, as the Fourth Circuit has recognized those decisions to be "subjective and scholarly judgments" that courts should review narrowly.  Smith v. Univ. of N.C., 632 F.2d 316, 345-47 (4th Cir 1980).

11

Googerdy claims his teaching was the reason for the students' higher scores, undisputed evidence shows that other professors also shared the responsibility of teaching review courses and other core courses.  Additionally, the school developed a plan for achieving higher passing scores by encouraging the collective effort of the entire faculty.  In light of the attention given to the improvement of scores by the entire college, it is unreasonable for Dr. Googerdy to attribute the improvement to his efforts without evidence other than his allegations.  See Mackey v. Shalala, 360 F.3d 463, 469-70 (4th Cir. 2004) ("A plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a prima facie case.").

Defendant has produced significant evidence showing that the cause for terminating (or deciding not to rehire) Dr. Googerdy was motivated by concerns unrelated to his national origin.  Without offering sufficient evidence that he was meeting his employer's legitimate expectations, Dr. Googerdy cannot survive summary judgment on his Title VII claim.  Accordingly, Defendant's motion for summary judgment will be granted.

**IV.  CONCLUSION**

For the reasons stated above,

IT IS ORDERED that Defendant's motion for summary judgment is granted.

IT IS FURTHER ORDERED that Defendant's Motion to Stay [53] and Motion for Relief from Judgment [51] are DENIED.

This the 16th day of January 2007.

                                                                       _____
                                                                         United States District Judge